FERDINAND DE JEAN,
Plaintiff,

*vs.*

THE BOARD OF DEACONS OF THE NEW TABERNACLE BAPTIST CHURCH: and JAMES JOHNSON, LESIE ROWLY, EDWARD MASON, OLLIE JOHNSON, MERRITT JOHNSON, LEN H. PARKER, and JOSEPH BILLINGS, Individually as members of the Board of Deacons,
Defendants.

*New Castle, March 4, 1958.*

*Joseph A. L. Errigo* and *Sidney J. Clark,* Wilmington, for plaintiff.

*Robert H. Wahl,* Wilmington, for defendants.

SEITZ, Chancellor: The members of the Board of Deacons of the New Tabernacle Baptist Church, apparently an incorporated organization, notified plaintiff this past fall that he was no longer pastor of the New Tabernacle Baptist Church. Plaintiff then commenced this action to restrain the Deacons from interfering with him in the discharge of his duties as pastor. This is the decision after final hearing.

Plaintiff claims that when he was called as pastor by the congregation in the fall of 1956, it was for an indefinite term, subject to termination by either side on 90 days notice. The defendants contend that plaintiff was employed by the Church for a term of one year, subject to the right of either party to terminate the call during the year by giving 90 days notice. Since the one year period expired this past fall, the first issue for decision is whether Plaintiff's call was terminated at that time.[1] Plaintiff has continued as pastor since December 13, 1957, because of a restraining order preventing interference until after final decision.

Preliminarily, it is agreed that only the Church membership can "call" a pastor. However, the Trustees and Deacons can make a recommendation. This they did at the time plaintiff was called. But the minutes of the joint meeting of the Trustees and Deacon Boards held September 10, 1956, dealing with that subject, are ambiguous as to a suggested tenure for plaintiff.

---

1. I should note that the Church entity is not a party and so relevant points are decided only to determine whether plaintiff is entitled to relief against these defendants.

Since only the church membership can call a pastor, we next look at the minutes of a church business meeting held September 14, 1956, at which time plaintiff was admittedly called. The minutes show that a Deacon reported that plaintiff had met with the Boards and given them satisfaction. The minutes set forth the sources of plaintiff's compensation for one year. They also state that, "If satisfactory to the Church, the Church can re-elect him". These two recitals in the minutes of the congregational meeting suggest that the plaintiff was called to serve as pastor for a definite term and not for an indefinite term. The credible oral testimony and the minutes of the September 26 meeting support the conclusion that this term was to be one year. I am also satisfied that plaintiff was aware that his original call was for a one-year term.

Since plaintiff was admittedly not recalled at the time his term expired, it is clear that he was not and is not pastor unless, as he contends, he was recalled by the action taken by the congregation on December 20, 1957. In considering this aspect of the problem I must minimize the importance of some of the legal niceties because I am satisfied that both factions in the Church were fully aware that they were voting on December 20th on the question as to whether or not they would keep the plaintiff as pastor., They held the meeting of December 20th after this action was commenced and with the present attorneys acting as judges of the election. I therefore cannot accept the contention of defendants' counsel that the vote involved nothing more than an informal poll of sentiment.

I believe the December 20th meeting was held to determine the plaintiff's future status. Defendants' counsel questions the sufficiency of the notice but I must assume the regularity of the notice in the absence of evidence to the contrary, and there was none. Moreover, I believe the defendants, through their counsel, agreed that the meeting should be held at the time, place and for the purpose indicated. Thus, as to them at least, I believe there is an estoppel involved. See 76 *C.J.S. Religious Societies* § 21.

Defendants point out that the vote to keep plaintiff as pastor was 28 for and 25 against, whereas a list submitted in evidence shows only

the names of 51 as voting. Furthermore, a list of those members in good financial standing contained only 50 names. As stated, the meeting was attended by the attorneys for both factions. No attack was made on the qualification of any member who voted or upon the regularity of the proceedings. I think it is too late now for these defendants to attempt to challenge the vote.

I am satisfied that both factions viewed the meeting as a "show down" and when defendants "lost" they then sought ways to avoid the result of the vote.

If only a majority vote of the congregation was necessary to call the pastor, I believe the fair inference is, from the way the matter was submitted at the December 20th meeting, that the plaintiff was called as pastor. However, since the matter as to his status was not known to the membership at the time and since "terms" were not mentioned, I think the fair assumption here is that the call was understood to be terminable at the pleasure of either the congregation or the pastor, and on the same financial terms. An indefinite call is the general practice. I should note that counsel made no point about the terms of the call, but the court feels that it is important to state its findings to clarify the matter.

Since plaintiff received only a majority vote at the December meeting, the next issue is whether a pastor can be called in the Baptist Church by the action of a mere majority of those attending the congregational meeting. I turn to the evidence, noting that no by-laws or other pertinent documents were submitted, except that the 27th printing (1954) of Hiscox's, *"The New Directory For Baptist Churches"* was agreed by the parties to be authoritative. Plaintiff says it requires only a majority vote to call while defendants urge that it requires a three-quarters vote. In Chapter IV entitled "Church Officers", under the heading "Pastors", and in the subdivision entitled "How Pastors Are Obtained" (pp. 98-99), it is stated, inter alia, as follows:

"If it be asked how the churches are to secure pastors, the reply is, by election, as the free choice of the people, in each indi-

vidual church. * * * A free people demand and maintain the right to choose their own rulers. They may ask, or accept advice; but no man is a pastor to any people until he has been chosen by a majority vote of that Church."

In Note 4 at the end of the discussion of "Pastors" it is stated:

"Note 4—In giving a *call,* the Church usually appoints a meeting for that express purpose, notice being publicly given two Sundays in succession, the purpose of the meeting being distinctly stated in the notice, and a *three-quarters vote* of all present at such a meeting should be deemed essential to a call. Certainly no prudent or self-respecting man would accept a call on anything less than that. Nor even on that if but a very small number are opposed to him."

The first foregoing quotation indicates that only the vote of a majority is legally necessary for a valid call. This is in keeping with the "democratic process" which is emphasized in connection with the functioning of the Baptist Church. Majority rule is the general test at least in congregational religions. See 76 *C.J.S. Religious Societies* § 20; Compare *Jones v. Johnson, 295 Ky.* 707, 175 *S.W.2d* 370. In contrast, the quoted material from the note is clearly more of a practical suggestion than a formal requirement. In so stating I do not mean to deprecate the profound wisdom of the suggestion, because it is clearly made to avoid the friction which almost inevitably accompanies the selection of a pastor by a divided congregation.

Since the court must be governed by the rule rather than the suggestion of the Baptist Church in this situation, I conclude that plaintiff was validly called at the December 20th meeting by the vote of a majority of the congregation in attendance.

I therefore conclude that plaintiff is now serving as pastor pursuant to a call which can be terminated by either side at pleasure and that such call is subject to the financial arrangements existing during his first call.

A permanent injunction will issue restraining the defendants from interfering with plaintiff in the discharge of his duties as pastor so long as his services are not terminated.

I must add, however, as here applicable, the wise words of Hiscox (pp. 103-104):

> "* * * But let a minister flee 'Church quarrels' as he would a pestilence. He may not be responsible for them, but if he becomes involved in them, though the merit of the case may be on his side, yet he cannot remain to fight them out without suffering more in peace of mind and reputation than any victory he can win will be worth. Let him retire to more quiet fields, where he can live in peace and do good without conflict, and leave the fighting to those who have less at stake. The world is wide, and he can do good and be happy in many another field."

Present order on notice.